## COPPOCK v HORINE

Ohio Appeals, 2nd Dist, Darke Co.

No. 572.   Decided April 11, 1940.

Wilbur D. Spidel, Greenville; Richard E Hole, Greenville, for plaintiff-appellee.

T. A. Billingsley, Greenville; James E. Thomas, Greenville, for defendant-appellant.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in the sum of $12,000 in favor of plaintiff and against the defendant.

The action was for damages for personal injuries suffered by the plaintiff by reason of a collision of an automobile of defendant with a farm wagon drawn by a team driven by plaintiff.

It appears from the petition and the record that at about 8:10 P. M. on the 22nd day of July, 1938, plaintiff, aged 45 years, was driving his farm team, a horse and a mule, in a northwardly direction on U. S. Route No. 127 and was moving on his right side of the center of the road. When plaintiff had reached a place approximately 4 miles south of the City of Greenville, the defendant, moving in the same direction as plaintiff, riding in a Chevrolet automobile which was being driven by his daughter and agent, Esther Horine, as she was about to go around the wagon to its left, collided with the left rear part thereof pushing the wagon into the team with such force as to kill the mule hitched to the wagon and throwing plaintiff between the team and the wagon, resulting in serious injuries.

It is averred and established that at the time of the collision defendant was riding with his daughter, Esther Horine, fifteen years of age; that she was at the time and place authorized and permitted to drive the automobile for the defendant.

The petition set forth six specifications of negligence.

(1) Failure of defendant's agent to keep a look-out in the direction in which she was driving.

(2) Failure to keep the defendant's automobile under proper control so as to be able to stop within the assured clear distance ahead.

(3) Failure to drive the automobile to the left hand side of and around the farm wagon of plaintiff in attempting to pass said farm wagon from the rear thereof.

(4) Negligence in the agent driving the automobile when she suffered from defective vision, making it unsafe for her to operate a motor vehicle, which condition was known to the defendant.

(5) Failure of defendant's agent to sound any warning of the approach of the automobile from the rear of the farm wagon of the plaintiff.

(6) "The defendant, Jacob Horine, with knowledge of the defective vision of Esther Horine, the driver of his automobile, was negligent in permitting Esther Horine to drive said automobile at a speed that was greater than reasonable and proper, considering her defective vision, on said highway at said time and place, to-wit: a speed of fifty (50) miles per hour."

The nature and extent of the injuries were set out in the petition. We will refer to them later in the opinion.

The petition, after setting out in detail the injuries claimed to have been suffered by plaintiff, averred that as the result thereof, plaintiff will be permanently disabled from following his occupation as a farmer, doing any manual labor; that he suffered intense pain and will continue to suffer pain during the remainder of his natural life from said injuries and will be required to spend large sums in the future for medical expenses and care. It is further averred that the plaintiff had incurred expenses for hospital services, $934.96, nurses account in the sum of $804.00 and physician's services in the sum of $1086.00. The value of the mule killed at the time of the collision was fixed at $100.00 and the value of harness destroyed at $5.00. The total amount prayed for in the petition was $37,929.96.

Defendant in his answer set up as a first defense a general denial of any negligence in the particulars set out in the petition, by way of second defense averred the contributory negligence of plaintiff. Plaintiff replied denying the affirmative averments of the answer.

The case came on for trial on September 21, 1939. On September 16, 1939, defendant filed an affidavit of T. A. Billingsley, one of his counsel, to the effect that Dr. J. A. Judy, an orthopedic specialist, whom defendant had expected to use as a witness in his behalf and without whom he could not safely proceed to trial would not be available as a witness if the trial proceeded because he had made prior arrangements to go to Illinois and that counsel had not learned of the proposed visit until the evening of September 15, 1939. No motion for continuance which the affidavit supports is found in the transcript of docket and journal entries nor is it noted in the Bill of Exceptions.

The cause was tried to a jury. The court before argument to the jury at the request of plaintiff gave four special charges to the jury and at the request of defendant gave one special charge. Among the instructions requested by the plaintiff was No. 2 as follows:

"The Court instructs you, as a matter of law, that if you find for the plaintiff, you will award him such amount of damages as will fairly and justly compensate him for the injuries, if any, which you find he has received as a direct consequence of defendant's negligence. If plaintiff is entitled to recover, he is entitled to recover full and whole compensation for such pain and suffering as you may find, by the preponderance of the evidence, he has endured from the date of injury on the 22nd day of July, 1938, to the present time, if any, as the direct and proximate result of injuries suffered July 22nd, 1938; such pain and suffering as you may find by a preponderance of the evidence, he will, with reasonable certainty suffer in the future, if any, as

the direct and proximate result of injuries sustained July 22nd, 1938.

If you find plaintiff is entitled to recover, he is entitled to recover such loss of earnings, if any, as you may find by a preponderance of the evidence he has sustained from the date of the injury, July 22, 1938, to the present time, as the direct and proximate result of injuries sustained on July 22, 1938; for such loss of earnings, if any, as you may find from a preponderance of the evidence, he will, with reasonable certainty, suffer in the future as the direct and proximate result of the injuries in the accident.

For such loss of earning capacity as you may find by a preponderance of the evidence, he will, with reasonable certainty, suffer in the future as the direct and proximate result of the injuries sustained in the accident.

If you find plaintiff is entitled to recover, he is entitled to recover as damages the reasonable amount paid out or expenses incurred by him for doctor, nursing and hospital bills in the treatment of him for the injuries suffered July 22nd, 1938, and such expenses for doctor, nursing and hospital bills as he will, with reasonable certainty, incur in the future, if any, as the direct and proximate result of injuries sustained in the accident July 22nd, 1938, but in no event shall the total amount allowed in the way of damages for personal injuries, if damages are found for plaintiff, exceed $37,824.96."

The court in its general charge respecting the measure of damages said to the jury,

"The court has already instructed you upon the measure of damages for personal injuries, having instructed you on that phase before argument, and will not repeat the instruction at this time."

The court submitted all of the specifications of negligence to the jury. A general verdict was returned for the plaintiff in the sum of $12,000.00 and after motion for new trial was filed and overruled judgment was entered on the verdict.

Appellant assigns and argues nine grounds of error.

(1) and (2) Error in the refusal of the court to strike the 6th ground of negligence from the petition and in submitting it to the jury.

(3) and (4) In failing to fully charge the jury upon the measure of damages in the general charge although requested to do so by the defendant, and error in the charge on the question of defective vision of the driver of defendant's car.

(5) In permitting photographs, plaintiff's Exhibits Nos. 6 and 7, to be submitted to the jury.

(6) In refusing to grant the application of the defendant for continuance so that he might have the witness, Dr. Judy, present.

(7) In submitting appellee's special charge No. 2 to the jury.

(8) and (9) The verdict is against and contrary to the weight of the evidence and excessive and given under the influence of passion and prejudice.

The first and second grounds of error must be resolved against the defendant upon the authority of **Clark v Stewart, 126 Oh St 263.**

(3) The court committed no error in its refusal to further charge upon the measure of damages in the general charge inasmuch as the jury was fully charged on the subject by the special instruction No. 2 requested by plaintiff and given before argument.

It is immaterial whether the law of the case is given to the jury in a special instruction before argument or in the general charge after argument or as a combination of both. The two taken together constitute the full charge of the Court. **Varner v Eppley, 125 Oh St 526.** If the charge as given was a correct exposition of the law, it had been given to the jury immediately before the arguments and was taken with the jury to its room as it deliberated and whether or not the subject thereof should have been repeated to the jury was purely within the discretion of the trial judge. As a matter

of fact, inasmuch as the jury had the charge on the subject of damages with it more emphasis was placed upon it than if it had been given in the general charge only.

It is urged, however, that the special instruction was incorrect in that it permitted the jury to consider the loss of earning capacity of plaintiff as an element of damages when it was not pleaded and that it also entitled the plaintiff to recover for loss of earnings as well as loss of earning capacity, thus permitting a double recovery for the same damage.

The assigned error is that the court erred in charging that the jury might consider loss of earning capacity in determining damages sought by plaintiff inasmuch as it was not specially pleaded.

We are cited in support of this proposition to **Waite Taxi Co. v McGrew, 16 Oh Ap 219.**

"In an action for damages for personal injuries, loss of earnings is an item of special damages and must be pleaded to entitle a recovery therefor."

This is not authority for the proposition that loss of earning capacity must be specially pleaded but that loss of earnings must be so. pleaded.

In this case neither loss of earnings nor impaired earning capacity was specially pleaded.

In Bates' New Pleading Practice, etc., Vol. 1, page 283, it is said,

"Impairment of earning capacity, relates to the future; loss of earnings, to the past, and loss of time, may be either or both, nor are they otherwise synonymous, * * *.

In case of severe or permanent injury, damage in all the above particulars; and in case of confinement for a time, loss in the first two are quite generally held to be such obvious and natural consequences as to be general damages requiring no specific averment or claim."

The text is supported by many citations. It is our judgment that in this case in view of the allegations as to the nature of the injuries and the resultant effects, both temporary and permanent, that, at least, there is included the elements of impairment of earning capacity and loss of time.

It is not necessary to determine if loss of earning capacity should have been specially pleaded because plaintiff offered testimony on the subject to which evidence no objection was interposed. Counsel for defendant then very fully cross-examined on the same subject matter. Notably at page 250 of the record this question was put to the plaintiff,

"Take year, 1937. I would like to know something about your earning capacity, the amount of money you earned in that year."

The reception of this testimony without objection and the cross-examination constituted a waiver of the claim that impairment of earning capacity should have been specially pleaded. 8 R. C. L. 614-615, 15 Am. Jur. 578.

The claim is further made that the charge permitted a double recovery for the same damage in that it permitted a recovery for loss of earnings, if any, as appeared with reasonable certainty the plaintiff would suffer in the future as a direct and proximate result of the injuries and also for loss of future earning capacity. This exception to the charge is the one close and difficult question and it has caused us considerable concern. The charge in its entirety is taken from Weygandt's Ohio Charges, the 1938 supplement, page 62 and it is asserted that it is supported by the case of Wallace v Spellacy, 8 N. P. (N.S.) 41, which was eventually affirmed without opinion in **79 Oh St 438.** We have carefully examined this case and find it no authority for the special instruction in the particulars as to which it is challenged. Nor do we find any other case in Ohio wherein loss of future earnings and loss of future earning capacity are both included in the measure of damages properly to be

awarded. Of course, we recognize that the special instruction is entitled to much weight because it has the approval of the author of the work on charges from which it is taken. The question is discussed by Judge Middleton in Waite Taxi Co. v McGrew, supra at page 226,

"In the instruction as to future loss of earnings the trial court evidently intended that instruction should cover the claim for decreased earning capacity, as no instruction on the latter claim was given either before argument or in the general charge. If it was so understood by the jury, and the jury limited the amount they allowed for diminution of earning capacity solely to the amount they found due for future loss of earnings, no prejudice could result to the company. However, no loss of future earnings was shown with reasonable certainty. Moreover, if the jury allowed for such loss of future earnings, and also allowed for decreased earning capacity, it would amount to a double allowance, for the reason that compensation for the loss of future earnings must end when compensation for the impairment of earning capacity begins. Blue Grass Traction Co. v Ingles, 140 Ky. 488."

We are cited to **Hanna v Stoll, 112 Oh St 344**, a leading and instructive case in which the opinon was written by Judge Matthias, wherein he states,

"The measure of damages for impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before the injury and that which he is capable of earning thereafter."

**LoSchiavo v Northern Ohio Traction & Light Co., 106 Oh St 61**, first syllabus;

"In actions for damages for personal injury one of the elements of damage is the impaired earning power of the injured party and the loss of personal earnings suffered during such time as the injured party was either wholly or partially incapacitated."

The determining factor in this case in the Supreme Court related to the charge that loss of profits might be included in the damages awarded plaintiff. We do not have enough of the facts to know whether or not the charge in the cited case was questioned in the particulars here considered. There is nothing in the syllabus, which we have quoted, to indicate that both the elements of loss of future earnings and impairment of future earning capacity were approved as proper measure of damages. This special instruction as given was erroneous.

It is further urged that the court erred in submitting to the jury the issue of defective vision of the driver of the car inasmuch as it appeared that she was wearing glasses at the time of the collision and it is asserted that with glasses on her vision was not impaired. Much of the record is devoted to the state of the vision of Esther Horine. It conclusively appears that she was near-sighted, had consulted a specialist for this condition and had been fitted with glasses to correct the vision. If only the testimony in behalf of the defendant on the subject is accepted it definitely appears that when Esther Horine was wearing her glasses she had normal vision. However, when all the circumstances in the record are considered in conjunction with her defective vision without glasses and the fact that immediately prior to the collision with the wagon, driven by plaintiff, the jury may have found that visibility was good and that notwithstanding, defendant's driver drove head on into the wagon, it may have believed that this could be accounted for only upon the theory that she did not and could not see the wagon in time to avoid the collision. If she did not see the wagon it is not unreasonable to conclude that there must have been something which prevented her seeing it. That this was the result of inability to see, in the light of the testimony as to her infirmity, is as logical a conclusion as any other that may be drawn from the

evidence. We are satisfied that this question of defective vision was one within the realm of factual dispute and that the jury had the right to pass upon it and to determine it in favor of the claim of the plaintiff.

It is urged that the court erred in admitting plaintiff's Exhibits Nos. 6 and 7, pictures of the wagon in which plaintiff was riding, taken after the accident inasmuch as they were not true likenesses of the objects photographed. It is the law that such photographs are admissible only when they appear to be accurately taken and proven to be correct representations of the subject which itself cannot be produced and are of such a nature as to throw light upon the disputed points. 17 O. Jur. 472.

If the alleged error was properly brought upon the record, we would be required to hold that the photos were properly admitted because a number of witnesses, particularly Mrs. Charlotte Dohme, stated that they were true representations of the wagon as it appeared after the accident and at such a time as that in probability there had been no changes in its physical condition from the time immediately after it was struck until the time that it was photographed. The record, however, discloses that no objection was interposed to the admission of the photographs in evidence.

It is urged in the brief of counsel for defendant that the record is incorrect and incomplete in that it fails to carry objections to the admission of this evidence which were interposed by counsel. If this is true the question should have been raised and urged in exceptions to the Bill of Exceptions and the matter should have been taken up and passed upon by the trial judge. Inasmuch as the bill is authenticated as being a full, complete and correct record of the trial of the cause we must so accept it.

(6) It is urged that the court erred in refusing to sustain defendant's application for continuance to permit the presence of Dr. Judy, an expert witness, whom the defendant expected to testify in his behalf. The cause came on for trial some seven and one-half months after the original petition was filed. The affidavit states that counsel did not know that the witness would not be available until some six days before trial but it does not appear that this information would not have been forthcoming had counsel made earlier inquiry nor does it appear that the witness would have testified as to any subject matter which was not covered by the medical testimony proffered and accepted in behalf of the defendant.

We are satisfied that a determination of the motion for continuance was within the discretionary power of the trial judge and that there was no abuse of this authority in denying the application.

It is also urged that the court in submitting specification No. 6 relating to the negligence of the defendant in permitting his daughter to drive the automobile knowing her to have defective vision, denied defendant the benefit of the defense of contributory negligence. We do not so interpret the effect of the action of the court. This defense was submitted to the jury and if it had been proven would have been effective to preclude recovery by the plaintiff upon any issue raised as to any specification of negligence. If contributory negligence had appeared it would have been as complete a defense to specification of negligence No. 6 as it would have been to any other claim of negligence.

The final errors assigned 8 and 9, relate to the weight of the evidence and excessiveness of the verdict and judgment. There is no merit in the claim that the judgment is against the weight of the evidence. The jury had ample support for the verdict returned if it believed the statements of plaintiff's witnesses, which it had a right to do. In connection with the claim of excessiveness of the verdict we will state the nature and extent of the injuries set out in the petition, all of which

the jury had the right to find established by the evidence.

Both legs were broken. In the right leg two bones fractured and comminuted in the upper third of the lower leg just below the knee, the flesh and skin under the bend of the knee, 5x10 inches, lacerated and torn in such a manner that the wound required 15 clamps to close it, required skin grafting in order to heal. The healed wound left a scar which is hardened and stiffened with scar tissue. Both bones in the left leg fractured in the upper third part of the leg below the knee, both fractures compounded and comminuted. The smaller bone or fibula in the left leg was fractured and compounded in the lower third part thereof. A concussion of the brain, laceration 1¼ inches long on the head in the left temporal region down to the bone or skull, requiring 3 clamps to close it. Loss of blood requiring transfusion of a pint of blood. Multiple bruises and abrasions over entire body. Mental and nervous shock. Confined to the hospital for five months. Fracture of two of the bones of the left leg below the knee had not united at the time the petition was filed and permanent injury to and definite loss of the use of the left leg. Left leg in a cast requiring continuous nursing and medical attention until months after filing the amended petition. As a result of the concussion plaintiff was unconscious for four days, delirious for six weeks. Some evidence of continuous lack of coordination attributed to the blow on the head. At the time of the trial had been entirely incapacitated from performing any manual labor; was nervous, suffered great pain, would continue to suffer and would be unable to perform labor for a period of one to several years in the future. The suffering which plaintiff endured while in the hospital was agonizing and protracted and was most unusual because the drugs which ordinarily allay pain had the effect of aggravating his condition.

The plaintiff at the time of the trial had incurred expenses incident to the treatment and care of his injuries in the sum of upwards of $3000.00. Applying the measure of damages to these injuries and the after effects thereof, requires us to say that although the verdict and judgment is high in amount it cannot be said to be excessive.

In considering the nature, extent and probable permanency of the injuries we accord to the plaintiff that favorable consideration of the evidence to which he is entitled upon a review upon questions of law.

It has been suggested by counsel for appellee that the Two Issue Rule would have application in this case if this court found that there was error in submitting any of the issues joined to the jury, if other issues were properly submitted.

It has not been necessary to give consideration to the Two Issue Rule and to the question whether or not it would have application because we find no prejudicial error in the submission of any issue to the jury.

The only error in this record which we find to have occurred to the prejudice of the defendant was in the charge as to the measure of damages. This case was well tried and the parties should not be put to the necessity of another trial if it can be avoided without injury to either. We are satisfied that, in no event, could the jury have improperly awarded more than $2000.00 by reason of the permission to fix double damages as to future loss of wages and impaired earning capacity. It is indeed doubtful if it could have, under the evidence, allowed so much. A remittitur by plaintiff in the sum of $2000.00 will, in our judgment, eliminate any prejudicial error on the record.

If plaintiff will enter a remittitur in the sum of $2000.00, the judgment will be affirmed in the amount of the original judgment less the remittitur. If plaintiff will not enter the remittitur, the judgment will be reversed and cause remanded.

GEIGER and BARNES, JJ., concur.

## APPLICATION FOR REHEARING

No. 572.   Decided May 9, 1940.

BY THE COURT:

Submitted on application of appellee for rehearing.

We have carefully read the application and the brief in connection therewith and in many particulars are in agreement with counsel for appellee.

We recognize that the injuries in this case were most severe, that the resulting excruciating pain and suffering was unusual in the extreme and, further, that there is marked probability that appellee will be permanently disabled. We were impressed with the moderation with which the medical experts, both for appellant and appellee, testified as to the prognosis of the injuries and were definitely of opinion that if there was any error in judgment it was in minimizing the future effects of appellee's injuries.

Nor would we hesitate in supporting the amount of this verdict as against any claim that it was excessive and if we knew the respective elements and appraisals which went into the amount of damages fixed by the jury we would readily support the amount of the verdict, if it did not include the one improper element which the charge on the measure of damages permitted it to include.

We did have difficulty in determining what our judgment should be after full consideration of the charge on the measure of damages but we have not been in doubt that the charge was erroneous in the particular to which we directed attention in our former decision. So that, our difficulty was to shape our judgment so that we would be satisfied that we had corrected any prejudice that may have resulted from the erroneous charge.

The difficulty with the argument for the rehearing is that too much reliance is placed upon conjecture. This speculative premise may be sound but we do not have the means of knowing that it is sound.

It is the rule that when a reviewing court has determined that a charge is improper in a matter material to the ultimate issues that it requires a reversal. We did not desire to reverse this case if it could be avoided and in ordering the remittitur fixed a sum which conclusively, in our judgment, removed any possible amount which had been improperly awarded by the jury under the charge of the court.

Counsel had the same opportunity and had available the same authority which was examined by this court to determine whether or not the charge which they prevailed upon the court to give was sound law. If they had examined the authority which they themselves cite and which is cited in the Charge Book from which the instruction was taken, they could readily have discovered that the citation would not support the charge.

Appellee is under no obligation to enter the remittitur and in view of subsequent developments which appear in the application for rehearing, it may be that such action should not be taken.

In any event we took the only legal step which we felt to be feasible to make the judgment in the trial court free from any prejudicial error to the appellant.

The application for rehearing will be denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.